IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> ) <br> 710 Muirhead Road ) <br> Mount Pleasant, South Carolina 29464 ) <br> ) | Case No. 2:22-cr-238 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR ANTICIPATORY SEARCH WARRANT**

Your Affiant, Justin Garrison, being duly sworn, hereby depose and state the following:

### A. INTRODUCTION

1.  I, Justin Garrison, am a Task Force Officer with The Drug Enforcement Administration (DEA). Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code (U.S.C.); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code. Your Affiant is currently employed by North Charleston Police Department and has been so employed since January 2012. I am currently assigned to the DEA Task Force (DEATF) located at the Charleston (SC) Resident Office (Charleston RO). While in narcotics, I have been assigned to work parcel interdiction. I have attended several parcel interdiction training classes while assigned to this duty. In connection with my official DEA duties, I investigate violations of federal drug laws and related

1

offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, 856, 952, 960 and 963, and Title 18, United States Code, Sections 2, 1952, 1956 and 1957. I have received specialized training in the enforcement of federal drug laws, the investigation of drug trafficking and distribution organizations, the recognition of drugs and drug terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

2.      I have participated in investigations involving the following types of drugs: cocaine and cocaine base, heroin, LSD, methamphetamine, crystal methamphetamine, marijuana, 3, 4 methylenedioxy methamphetamine (MDMA) and anabolic steroids. I am personally familiar with and have used all normal methods of investigation, including, but not limited to, visual (stationary and mobile) surveillance, electronic surveillance, pen registers and trap and trace devices, informant and witness interviews, toll analysis, interrogation and undercover operations. I have personally participated in Title III investigations.

3.      Based upon my training and experience, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, use cellular telephones, digital display paging devices, and calling cards to facilitate drug activity, and use numerical codes and code words to conduct their transactions.

4.      In this investigation, your affiant is acting as the case agent, along with TFO James White of the DEA. In this capacity, your affiant is jointly responsible for coordinating and overseeing all aspects of the current investigation and is thoroughly familiar with the information contained

2

in this affidavit, either through personal investigation or through discussions I have had with other agents/officers who have conducted interviews or who have themselves obtained information, which they in turn have reported to me.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

6. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of drug proceeds, and the terminology and coded language used by drug traffickers.

7. Your Affiant makes this affidavit in support of an application for an anticipatory search warrant for the residence located at 710 Muirhead Road, Mount Pleasant, South Carolina (S.C.) 29464 (hereinafter, "the TARGET RESIDENCE") more fully described in Attachment A. There will be probable cause to believe that evidence, fruits, and/or instrumentalities of the following violations: Title 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute; and Title 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute, will be located in the TARGET RESIDENCE.

8. The statements contained in this affidavit are based upon your Affiant's personal knowledge and/or on information provided by other domestic and foreign law enforcement officers, agents, and personnel, as well as on your affiant's experience, background, and training. Because this affidavit is being submitted for the limited purpose listed above, your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only those facts believed to be necessary to establish probable cause. Where statements

made by others or from documentary review have been reported, said statements are reported in substance and in part, unless otherwise noted.

### B.    AFFIANT'S KNOWLEDGE

Based upon my training and experience and discussions with other agents and law enforcement officers concerning the distribution of controlled substances, I am aware of the following:

a.  That drug trafficking on a scale as described herein is an economic crime based on the profits to be earned. Large-scale narcotics traffickers often maintain, on hand, large amounts of U.S currency to maintain and finance their ongoing drug business.

b.  That persons engaged in drug trafficking commonly conceal controlled substances, currency, financial instruments, precious metals, jewelry, titles to automobiles, and other items of value in their residences, businesses, and automobiles.

c.  That when drug traffickers amass large proceeds from the sale of drugs, the traffickers attempt to legitimize these profits thorough various money laundering techniques such as the placing of assets in nominee names, use of legitimate and sham/shell businesses, use of financial institutions, use of wire transmitters, and numerous other techniques. That to accomplish these goals they often utilize domestic and foreign banks and/or financial institutions and their attendant services, securities, safe deposit boxes, cashier's checks, drafts, letters of credit, brokerage houses, real estate, "shell" corporations and businesses as "fronts" for their proceeds.

4

d. That narcotics traffickers purchase assets with the proceeds of their unlawful activity and often place these assets in nominee names. Oftentimes, drug dealers place these assets in names of relatives, close acquaintances, or business entities to avoid detection of these assets by government agencies.

e. That drug traffickers commonly "front" (provide on consignment) drugs to their customers or clients and frequently maintain records of same.

f. That safes and other concealed compartments are often utilized as locations to store drugs, currency, assets, and other proceeds and evidence of drug trafficking.

g. That after purchasing controlled substances, traffickers will often transport or have transported these controlled substances to areas where they will distribute the controlled substances. That methods of transportation include but are not limited to commercial airlines, private aircraft, boats and ocean-going vessels, rental and private automobiles, government and contract mail carriers.

h. That it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them. Additionally, it is common that all or part of these records are in code and kept at different locations to avoid detection by law enforcement.

i. That drug traffickers often take, or cause to be taken, photographs or videos of

      themselves, their associates, their property and assets, and their product. That these photos are usually maintained in their residences.

j.    That drug traffickers often keep readily available the paraphernalia for packaging, cutting, weighing, and distribution of controlled substances. That these items include, but are not limited to, scales, plastic bags, and heat sealers.

k.    That drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but is not limited to, digital display pagers (beepers), cellular telephones, computers, speed dialers, electronic telephone and date books, money counters, fax machines, and police scanners.

l.    That people who traffic in controlled substances frequently maintain firearms or other weapons to protect themselves, the controlled substances, and the proceeds of the sale of controlled substances on their persons, at their residences, in their automobiles, and/or at their businesses.

m.    That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

n.    That drug traffickers commonly have in their possession, that is, on their person, at their residences, in their automobiles, and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. currency.

### C. PROBABLE CAUSE

9. On January 25, 2022, DEA Task Force Officers (TFOs) were contacted by corporate security at a UPS facility in North Charleston, SC in reference to a suspicious parcel. UPS corporate security identified a suspicious parcel and conducted an administrative inspection according to UPS policy and procedure. During the inspection, UPS corporate security identified the contents to be narcotics and thus undeliverable due to the safety of their employees. UPS corporate security contacted Your Affiant, who responded to the UPS shipping facility and seized the parcel. Your Affiant transported the parcel to the DEA Charleston RO where the contents inside the parcel were processed according to DEA Policy and Procedure. The contents field tested presumptive for methamphetamine and had an approximate weight of 15 kilograms.

10. The UPS shipping label, Tracking Number 1Z 1XY 565 01 6474 7376, indicates the following:

    **Shipper Information:**
    Jose Flores
    1354 E. 59th Street
    Los Angeles, CA 90003

    **Recipient Information:**
    Dion Green
    710 Muirhead Road
    Mt Pleasant, SC 29464



11.  On January 25, 2022, Special Agents and TFOs with the DEA Charleston RO began to investigate the seized parcel containing approximately 15 kilograms of methamphetamine being delivered to 710 Muirhead Road in Mount Pleasant, South Carolina. The parcel was shipped from Los Angeles, California. California is considered to be a source state of illegal narcotics due in part to its close proximity to the Mexico border.

12.  The parcel is labeled as being shipped by "Jose Flores" from 1354 E. 59th St., Los Angeles, CA 90003. Through databases accessible by Law Enforcement, it was found that there is no "Jose Flores" associated to 1354 E. 59th Street, Los Angeles, CA. It is common for drug traffickers to utilize false names and addresses in order to deceive Law Enforcement.

13.  The Recipient of the parcel is labeled as "Dion Green" at 710 Muirhead Road, Mount

Pleasant, S.C. 29464. Through databases accessible by law enforcement, it was found that there is no "Dion Green" associated to the residence at 710 Muirhead Road. Your Affiant knows through training and experience that drug traffickers who ship and receive drug-laden parcels frequently use false names and addresses in order to deceive law enforcement.

14.   While continuing to investigate this drug laden parcel and the address of 710 Muirhead Road, law enforcement has identified an Albert NELSON. A criminal history check was completed for NELSON, which shows a 2016 conviction for Distribution of Cocaine, a 2016 conviction for Possession of Methamphetamine, a 1991 conviction for Manslaughter, a 1991 conviction for armed robbery, and a 1991 conviction for Assault and Battery with Intent to Kill.

15.   During surveillance of the residence 710 Muirhead Road, TFO Christopher Haus observed a red Jeep Grand Cherokee at the residence displaying South Carolina license plate 5807LD. A query was done through South Carolina DMV which showed the registered owner of the Jeep Grand Cherokee as NELSON.

16.   It was learned through UPS corporate security that the address 710 Muirhead Road received a 35-pound parcel on Friday January 21, 2022, from the exact same shipper as the drug laden parcel seized on January 25, 2022.

### D.   REQUESTED AUTHORITY

17.   You're Affiant along with members of the DEA and state/local law enforcement wish to perform a controlled delivery of the package. On January 25, 2022, an undercover (UC) DEA TFO posing as a UPS delivery person will attempt to make contact with the recipient listed on the address label and then conduct a controlled delivery of the package to the TARGET RESIDENCE, more fully described in Attachment A. If the parcel is accepted and transported

9

within this location for any reason whatsoever, this search warrant will be executed. If the parcel is not transported into the residence, the search warrant will not be executed.

### E.   CONCLUSION

18.   On the basis of my training, experience and participation in this investigation, which includes information communicated to me from other law enforcement officers, I believe there is probable cause to believe that the address referred to as 710 Muirhead Rd, Mt Pleasant, SC 29464, contains contraband and evidence of criminal conduct. Specifically, Your Affiant believes that the TARGET RESIDENCE contains controlled substances, specifically methamphetamine or other illegal drugs, documents and records relating to drug trafficking activities and assets purchased with proceeds derived from drug trafficking. These items may include documents that identify other drug associates, including co-conspirators in this investigation, and/or assets purchased with proceeds of drug trafficking. I have probable cause to believe that this address will contain ledgers or books which indicate payments made or received in the drug business, computers used to order illegal narcotics, safe deposit keys indicating where U.S. currency or other valuables may be stored, U.S. currency, (Official Authorized Funds), used in controlled buys, credit card statements and/or credit card receipts which indicate travel made in furtherance of the drug business, passports indicating travel made in the furtherance of drug trafficking, statements or business cards indicating contacts with banks, investment companies, travel agents and the like, and correspondence to or from individuals associated with the drug trafficking organization. I believe, based on my prior knowledge and training, that there is now located at 710 Muirhead Rd, Mt Pleasant, SC 29464 evidence, listed in Attachment B, attached hereto and incorporated herein, of violations of United States laws,

specifically Title 21 United States Code § 841(a)(1) and 21 USC § 846.

This affidavit has been reviewed by AUSA Whit Sowards.

Further your Affiant sayeth not.

_____
Justin Garrison, Task Force Officer
Drug Enforcement Administration

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This __25th__ day of __January__, 2022
Charleston, South Carolina

_____
The Honorable Molly H. Cherry
UNITED STATES MAGISTRATE JUDGE

11